IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGEL NICOLE STULL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-227-E |
| | ) |
| ANDREW SAUL, ACTING | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 28th day of September, 2020, upon consideration of the parties' cross motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for child's insurance benefits based on disability under Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms.  See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]  Plaintiff claims, in essence, that the Administrative Law Judge ("ALJ") erred by: (1) determining that Plaintiff can engage in work on a regular and ongoing basis, despite

evidence of record to the contrary; and (2) failing to consider properly certain evidence regarding her mental health in making his residual functional capacity ("RFC") assessment. The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

First, Plaintiff contends that the ALJ erred in finding that she can engage in work on a regular and ongoing basis. More specifically, Plaintiff argues that the ALJ ignored evidence showing that Plaintiff would have a significant rate of absenteeism and time off task, as well as testimony by the vocational expert ("VE") that such absenteeism and time off task would indicate that Plaintiff would be unable to maintain employment. Thus, in making this claim, Plaintiff is essentially attacking the ALJ's RFC assessment and his subsequent reliance on the VE testimony in determining that Plaintiff is not disabled.

At the outset, the Court notes that a claimant's RFC is the most that he or she can do despite his or her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is solely within the province of the ALJ. See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c). In formulating a claimant's RFC, the ALJ must weigh the evidence as a whole, including medical source opinions and the credibility of a claimant's subjective complaints. See 20 C.F.R. §§ 404.1527, 404.1529, 404.1545, 416.927, 416.929, 416.945. Furthermore, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); see also 20 C.F.R. §§ 404.1527(d)(2); 404.1546(c); 416.927(d)(2), 416.946(c); S.S.R. 96-5p, 1996 WL 374183 (1996). An ALJ is not limited to choosing between competing opinions in the record, and may instead develop his or her own. See 20 CFR §§ 404.1546(c); 416.946(c). Therefore, the ALJ is not required to rely only on a particular physician's opinion, and the RFC finding is actually an administrative—rather than a medical—determination. See 96-5p, 1996 WL 374183, *5 (1996).

According to the ALJ's RFC in this case, Plaintiff is capable of performing sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with certain additional limitations. (R. 22). Because Plaintiff's ability to perform all or substantially all of the requirements of this level of work is impeded by additional limitations, the ALJ properly sought the advice of a VE to determine the effect that Plaintiff's additional limitations have on the work available to her. Thus, at the administrative hearing, the ALJ posed a series of hypothetical questions to the VE, including whether an individual with Plaintiff's age, education, work experience and RFC could perform jobs that exist in significant numbers in the national economy. (R. 30, 68-70). In response, the VE testified that such an individual could in fact perform the requirements of representative occupations such as electronic assembler (30,000 jobs nationally), addresser (40,000 jobs nationally), and document preparer (50,000 jobs nationally). (R. 30, 70). The ALJ subsequently concluded, based on this testimony, that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and that a finding of "not disabled" was therefore appropriate. (R. 30).

Plaintiff asserts, however, that the ALJ failed to consider the medical evidence showing that she would be off task and absent from work as well as the VE's response to follow-up

questions the ALJ and Plaintiff's counsel asked regarding additional limitations due to potential absences from work.  Thus, Plaintiff argues that the ALJ should also have considered the VE's responses to follow-up questions about whether there would be work available for a person who would be off task more than 10 percent of the workday or who would miss at least two days of work per month (including late arrivals or leaving early).  (R. 70-71).  Plaintiff asserts that the record shows that she frequently attended medical appointments or sought emergency care and that her mental and physical impairments would cause her to be off task more than ten percent of the workday or to be frequently absent from work.

It is important to note that, while the hypothetical question to the VE must accurately portray the claimant's impairments, such question need only reflect those impairments that are adequately supported by the record.  See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (explaining that your RFC "is the most you can still do despite your limitations").  Plaintiff correctly points out that the VE testified that missing two days of work per month or being off task more than ten percent of the workday would preclude full-time competitive employment.  (R. 70-71).  While the ALJ and Plaintiff's counsel did pose follow-up questions as to whether such additional limitations regarding missing work would be tolerated, when the ALJ ultimately formulated Plaintiff's RFC, he did not find that the additional suggested restrictions regarding absenteeism or time off task needed to be included therein.

Upon careful review, the Court emphasizes that the ALJ clearly explained the reasoning underlying his RFC determination, which also formed the basis for the ALJ's hypothetical question regarding the ability of an individual such as Plaintiff to perform jobs in the national economy.  The ALJ included in his analysis a thorough discussion of the record in this case, which included Plaintiff's treatment notes revealing her symptoms and treatment as well as her various appointments and visits to the ER.  Nevertheless, Plaintiff attempts to contest the ALJ's conclusion by arguing that, based on the medical records, she would obviously miss multiple full or partial days of work each month due to medical appointments and time off task.

The Court does not agree.  The Court first notes that the record shows Plaintiff's wrist impairment to require only sporadic and conservative treatment.  (R. 23-24).  Plaintiff attended only a handful of medical appointments for this issue over the years, and there is no evidence in the record to support her claim that it affected her ankles as well as her wrists.  Nevertheless, the ALJ explained that he accommodated this impairment by limiting Plaintiff to sedentary work "with no more than frequent fingering and handling to account for any reasonably demonstrated symptoms and limitations related to her Madelung deformity and carpal tunnel syndrome." (R. 24).  With regard to Plaintiff's allegations that her MRSA and/or cellulitis outbreaks prevent her from working or require her to isolate herself for periods of time, the ALJ explicitly reviewed the evidence of record that did not fully support her subjective complaints, and reasonably determined that "there is no indication that these conditions would preclude her from working within the parameters of the above [RFC]," which included a restriction to sedentary work. (R. 24-25).  As for her allegedly disabling breathing problems, the ALJ noted that Plaintiff's record reveals mild asthma, mostly normal tests, and that she continued to smoke against doctors' advice.  (R. 25-26).  However, the ALJ still accommodated Plaintiff's asthma by

limiting her "to a reduced range of sedentary exertional work with postural restrictions and no concentrated exposure to dust, fumes, odors, gases, and environments with poor ventilation, wetness, humidity, and temperature extremes to accommodate her respiratory condition." (R. 26). Finally, with regard to her mental health, discussed further, infra, the Court finds that the ALJ carefully reviewed the evidence or record, but found that it simply does not support restrictions greater than those he included in the RFC. (R. 26-29).

Moreover, while the record undoubtedly shows that Plaintiff has attended a number of appointments over the years, there is no indication in the record that each appointment requires her to miss a full day of work. Additionally, since the record does not show that such appointments could not be scheduled outside of Plaintiff's prospective working hours, there is also no indication that Plaintiff would necessarily have to miss partial days of work in order to attend her appointments. Quite simply, Plaintiff never established that she would have the necessary absences per month, or the amount of time off task, that the VE indicated would preclude her from engaging in work on a regular and ongoing basis. Thus, the Court finds that the ALJ's RFC assessment is supported by substantial evidence, and the Court does not find that the ALJ erred in posing his hypothetical question to the VE, and in subsequently finding the existence of jobs that Plaintiff could perform, based on that RFC.

Second, Plaintiff argues generally that the ALJ ignored or rejected medical evidence regarding her mental impairments. Specifically, Plaintiff appears to focus on the ALJ's treatment of the opinion of consultative examiner Lisa Osachy, Psy.D. (R. 535-41). Although Plaintiff does not cite other particular evidence that the ALJ allegedly ignored, the Court notes that the ALJ discussed the medical and opinion evidence of record concerning Plaintiff's mental health at great length, explaining that the record reveals mostly normal mental status examination findings and that Plaintiff reported improvement from her medication. (R. 26-28). Dr. Osachy's assessment, however, based on a one-time examination, found Plaintiff to have notable limitations in various areas, including: moderate limitations in the ability to understand, remember and carry out simple instructions, make judgments on simple work-related decisions, and interact appropriately with others; and marked limitations in understanding, remembering and carrying out complex instructions, making judgments on complex work-related decisions and responding appropriately to usual work situations and changes in a routine work setting. (R. 539-40). The ALJ discussed Dr. Osachy's report at some length in his decision, and then concluded that he gave that opinion "some weight . . . to the extent that it is consistent with her own examination findings and [the ALJ's RFC], which includes sufficient task and interaction restrictions to account for [her] mental conditions." (R. 28). The ALJ further indicated that, to the extent Dr. Osachy assessed greater limitations than he determined in his RFC, he found "that portion of her opinion to be without substantial support from the largely normal mental status examination findings of record and the claimant's conservative course of treatment." (R. 28).

Plaintiff also contends that the ALJ erred in failing to find that she is disabled under SSR 85-15, arguing that she was found by Dr. Osachy to have marked limitations in multiple basic work-related activities. See SSR 85-15, 1985 WL 56857, at *4 (1985). The Court finds, however, that the ALJ did not err in disagreeing with the Dr. Osachy's opinion regarding marked limitations and that the ALJ reasonably explained why he gave Dr. Osachy's assessment the

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 11) is GRANTED.

s/Alan N. Bloch<br>United States District Judge

ecf:     Counsel of record

---

weight that he did in his decision. See Chandler, 667 at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). Quite simply, the ALJ was under no obligation to adopt Dr. Osachy's opinion, and he clearly and reasonably explained the reasons for his findings. The Court therefore finds no merit in Plaintiff's contention that the ALJ ignored or improperly rejected evidence of her mental impairments in making his RFC assessment.

       As to any additional arguments mentioned summarily by Plaintiff in her brief, the Court finds that Plaintiff has failed to establish how the ALJ's failure to consider properly any additional evidence of record constitutes reversible error.

       In sum, the Court finds that the ALJ's hypothetical question to the VE fully accommodated the limitations that were supported by the record, which were also properly included in the RFC, and that the ALJ did not err in relying on the response of the VE to his hypothetical question. Additionally, after careful review of the record, the Court finds that the ALJ did not err in evaluating the evidence of Plaintiff's mental impairments in formulating Plaintiff's RFC. Accordingly, the Court affirms.